FILED
John E. Triplett, Acting Clerk
United States District Court

*By MGarcia at 10:20 am, Jul 24, 2020*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| RENARDA JERMAL SMITH, | |
| Plaintiff, | CIVIL ACTION NO.: 6:18-cv-119 |
| v. | |
| WARDEN JEFF COLEMAN, et al., | |
| Defendants. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Presently before the Court is the Motion to Dismiss of Defendants Coleman, Copeland, Hartmeyer, McCumber, McFarlane, and Williams, filed under 42 U.S.C. § 1997e(a), doc. 26. For the reasons that follow, I **RECOMMEND** the Court **GRANT in part** Defendants' Motion and **DISMISS without prejudice** Plaintiff's claims against Defendants Coleman, Copeland, McCumber, McFarlane, and Williams and **DISMISS without prejudice** Plaintiff's Eighth Amendment claim and Plaintiff's claim of retaliation occurring on December 12, 2017 against Defendant Hartmeyer.  However, I **RECOMMEND** the Court **DENY in part** Defendants' Motion to the extent it seeks dismissal of Plaintiff's retaliation claim against Defendant Hartmeyer based on Defendant Hartmeyer's refusal to provide Plaintiff a state meal during the Ramadan fast.  Additionally, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Robinson.

## BACKGROUND

After a frivolity screening under 28 U.S.C. § 1915A, this Court permitted Plaintiff to proceed on claims against Defendants Coleman, McCumber, and McFarlane in their individual

capacities based on the lack of nighttime emergency assistance at Rogers State Prison. Doc. 12 at 12. Specifically, Plaintiff complained he suffered an asthma attack on the night of October 8, 2017, and was unable to alert officials that he needed emergency assistance, causing him to fear for his life. Doc. 10 at 11. The Court also permitted Plaintiff to proceed on his Eighth Amendment claims and his retaliation claims against Defendants McFarlane, Coleman, Williams, Robinson, Copeland, and Hartmeyer based on a December 12, 2017 incident where Plaintiff was left in an outdoor cage for over eight hours during freezing weather. Doc. 12 at 9, 14. Finally, the Court permitted Plaintiff to proceed on a retaliation claim against Defendant Hartmeyer based on his refusal to provide Plaintiff a state meal during the Ramadan fast. Id. at 14.

I.  **Defendants' Motion to Dismiss**

Defendants Coleman, Copeland, Hartmeyer, McCumber, McFarlane, and Williams seek dismissal of Plaintiff's claims against them, alleging he failed to comply with the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

Section 1997e(a) requires that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). "The plain language of the statute makes exhaustion a precondition to filing an action in federal court." Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citation omitted).

### A. Standard of Review

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374–75 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

To evaluate the exhaustion of administrative remedies, first, the district court looks to the parties' factual allegations, and if they conflict, the court takes the plaintiff's version as true. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). If, per the plaintiff's account, the administrative remedies have been exhausted, then the court proceeds to step two. At step two, the defendants bear the burden of proving that the plaintiff did not exhaust administrative remedies. Id. At this stage, the court makes factual findings on whether or not the plaintiff exhausted the available remedies. Id. To the extent the factual findings lead to procedural dismissal as opposed to dismissal on the merits, the district court is free to make any findings necessary to resolve the issue. Bryant, 530 F.3d at 1376–77. If the remedies are not found to be exhausted, then dismissal is appropriate. Turner, 541 F.3d at 1083.

**B.     Plaintiff's Exhaustion of Administrative Remedies**

Defendants Coleman, Copeland, Hartmeyer, McCumber, McFarlane, and Williams acknowledge that on October 12, 2017, Plaintiff timely filed Grievance Number 253286 regarding his asthma attack, and, on December 13, 2017, he timely filed Grievance Number 258186 concerning the segregation yard cage incident.  Doc. 26-1 at 5.  However, Defendants allege that rather than fully exhausting these grievances prior to filing his suit, Plaintiff voluntarily dropped both grievances and is, therefore, barred from bringing suit on the claims that form the basis of this lawsuit.  Id.  As support, Defendants submitted copies of the Grievance Resolution/Drop Forms for Grievance Number 253286 and Grievance Number 258186.  Doc. 26-3 at 6, 11.

Plaintiff, in his Response, does not dispute that he voluntarily dropped Grievance Number 253286 on December 14, 2017.  See Docs. 30, 30-1.  Thus, the Court finds Plaintiff's claims related to the failure to provide nighttime emergency assistance are due to be dismissed, as Plaintiff failed to fully exhaust his available administrative remedies with regard to those claims.

However, Plaintiff does dispute Defendants' contention that he voluntarily dropped Grievance Number 258186 concerning his exposure to freezing temperatures for over eight hours.  Specifically, Plaintiff argues the signature on the March 6, 2018 Grievance Resolution/Drop Form presented by Defendants with their Motion to Dismiss is a forgery, and as support, Plaintiff submits several examples of his signature on other court filings.  Doc. 30-1 at 2, 6–11.  The Court, upon reviewing the signatures submitted by Plaintiff, as well as his signatures on file in this matter, observes there is a noticeable difference between the signature on the March 6, 2018 Grievance Resolution/Drop Form, doc. 26-3 at 11, and his signature on

4

other Court filings, doc. 30-1 at 6–11.  Additionally, in Plaintiff's Amended Complaint, he alleges that on March 7, 2018, he brought up the December 2017 grievance with Ms. Stankowitz, the Deputy Warden of Care and Treatment, and she indicated responsive action was being taken, doc. 10 at 12, thus conflicting with Defendants' allegation that Plaintiff voluntarily dropped the grievance on March 6, 2018.

However, the Court need not resolve whether the signature on the March 6, 2018 Grievance Resolution/Drop Form, doc. 26-3 at 11, is, in fact, Plaintiff's signature.  In their Reply, Defendants argue that, even if Plaintiff's signature were forged on the March 6, 2018 Grievance Resolution/Drop Form, Plaintiff still failed to appeal the issue raised in Grievance Number 258186, and thus, exhaustion was never completed.  Doc. 32 at 2.  Plaintiff, in his Amended Complaint, acknowledges he never appealed the Grievance Number 258186 for the December 12, 2017 incident, stating, "The December 14, 2017 grievance was so far [past] statute of 30 days I could[n't] appeal it."  Doc. 10 at 12.

Plaintiff appears to believe he needed to receive a response to his grievance before he could file an appeal.  The grievance policy, however, provides the opportunity to appeal a grievance as soon as the time for a response has expired.  Doc. 26-2 at 14 ("If the time allowed for the original grievance response to be given to the offender has expired and the offender has not received the original grievance response, the offender may file a Central Office Appeal on his/her Grievance.").  Thus, Plaintiff could have filed his appeal in early 2018, as soon as the 40 days for the Warden to deliver his decision to Plaintiff expired.  Doc. 26-2 at 12; see also Id. ("The offender may file a Central Office Appeal . . . after . . . the time allowed for the Warden's decision to be given to the offender has expired.").

"To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." Bryant, 530 F.3d at 1378 (citation and quotation marks omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90–91 (2006). "[A] court may not excuse a failure to exhaust." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

In this case, Georgia's Statewide Grievance Procedure clearly had two steps, the original Grievance and the Central Office Appeal. Doc. 26-2 at 9. The documents submitted by Defendants, as well as the allegations contained in the Amended Complaint, indicate Plaintiff likely complied with the first step of the grievance process with respect to Grievance Numbers 253286 and 258186 but not the second step.[1] Further, Plaintiff has not demonstrated that the administrative remedies at issue were not available to him. Cf. Turner, 541 F.3d at 1084 ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.").

Based on the above, there is no need to proceed to step two of the Turner analysis. In taking Plaintiff's version as true, in accordance with step one of Turner, the Court can only

---

[1] While Plaintiff does not dispute Defendants' contention that he voluntarily dropped Grievance Number 253286 concerning his asthma attack, the Court notes Plaintiff, in his Amended Complaint, acknowledged he never appealed the grievance, stating he "[c]ouldn't appeal because the response ask[ed] to give them time to add the panic button, as of [J]une 26, 2018, they still did[n't] have panic button an[d] that made me pa[st] the 10 days to appeal." Doc. 10 at 12. Even if the Court were to construe this allegation as meaning Plaintiff received a response but ran out of time to appeal due to Defendants' actions, he would still not be able to satisfy the exhaustion requirement. In such a situation, Plaintiff would have been obligated to seek a good cause waiver to file an untimely appeal of his grievance before the Court could deem his administrative remedies fully exhausted. See Bryant, 530 F.3d at 1379 ("Because [Plaintiff] did not pursue a good cause waiver after his appeal was dismissed as untimely, he did not fully exhaust the administrative remedies available to him."); see also Doc. 26-2 at 14 ("The Grievance Coordinator or Central Office staff may waive [the appeal] time limit for good cause.").

6

conclude Plaintiff failed to fully exhaust his available administrative remedies with respect to the events of October 8, 2017 and December 12, 2017.

As such, I **RECOMMEND** the Court **GRANT in part** Defendants' Motion to Dismiss and **DISMISS without prejudice** Plaintiff's claims against Defendants Coleman, Copeland, McCumber, McFarlane, and Williams. As to Plaintiff's claims against Defendant Hartmeyer, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Eighth Amendment claim and Plaintiff's claim of retaliation occurring on December 12, 2017. However, as addressed in a separate section below, Plaintiff's claim against Defendant Hartmeyer concerning the denial of a Ramadan meal was not addressed by Defendants' Motion to Dismiss, and therefore I **RECOMMEND** the Court **DENY in part** Defendants' Motion to Dismiss to the extent it seeks dismissal of all claims against Defendant Hartmeyer.

### C. Plaintiff's Retaliation Claim Against Defendant Hartmeyer Based on Denial of a State Meal During Ramadan Fast

In this Court's December 18, 2019 Report and Recommendation, the Court stated, "Plaintiff may also proceed with his retaliation claim against Defendant Hartmeyer for denying him a state meal during the Ramadan fast, which Plaintiff alleges occurred after he inquired about the status of his grievance for the December 12, 2017 incident." Doc. 12 at 14. Defendant Hartmeyer asks the Court to dismiss all claims against him but fails to address the Ramadan meal incident in his Motion to Dismiss. Docs. 26, 26-1. As a result, Defendant Hartmeyer has not demonstrated that Plaintiff failed to fully exhaust his administrative remedies regarding the meal incident. Defendants did submit a list of Offender Grievances for Plaintiff with their Motion to Dismiss, doc. 26-3 at 2, but the exact nature of the grievances on the list is unclear. As such, I **RECOMMEND** the Court **DENY in part** Defendants' Motion to Dismiss to the extent it seeks

7

dismissal of Plaintiff's claim of retaliation against Defendant Hartmeyer based on the failure to provide a state meal during the Ramadan fast.

## II.     Plaintiff's Claims Against Defendant Robinson

Despite this Court's directive for the United States Marshals Service to serve the Defendants, doc. 13 at 2, it appears service was never made on Defendant Robinson. There is no waiver of service or proof of service on file with the Court for Defendant Robinson, and Defendant Robinson did not join the Motion to Dismiss filed by his co-Defendants. Doc. 26. However, the Court still finds Plaintiff failed to exhaust his claims against Defendant Robinson.

Plaintiff's remaining claims against Defendant Robinson involve the December 12, 2017 outdoor cage incident. Doc. 12 at 9, 14. However, as explained above, Plaintiff acknowledged in his Amended Complaint that he did not appeal his grievance concerning the December 12, 2017 outdoor cage incident. Doc. 10 at 12 ("The December 14, 2017 grievance was so far [past] statute of 30 days I could[n't] appeal it."). While failure to exhaust is considered an affirmative defense that can be waived by a defendant, if the face of the Complaint indicates exhaustion did not occur, the Court has the authority to sua sponte dismiss the Complaint. See Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint."). Here, Plaintiff indicates in his Amended Complaint he failed to fully exhaust his administrative remedies regarding his claims against Defendant Robinson; therefore, the Court has the authority to dismiss such claims. See Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative

process." (citation and quotation marks omitted)).  I, therefore, **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Robinson.[2]

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT in part** Defendants' Motion to Dismiss and **DISMISS without prejudice** Plaintiff's claims against Defendants Coleman, Copeland, McCumber, McFarlane, and Williams and **DISMISS without prejudice** Plaintiff's Eighth Amendment claim and Plaintiff's claim of retaliation occurring on December 12, 2017 against Defendant Hartmeyer.  However, I **RECOMMEND** the Court **DENY in part** Defendants' Motion to Dismiss to the extent it seeks dismissal of Plaintiff's retaliation claim against Defendant Hartmeyer based on his refusal to provide Plaintiff a state meal during the Ramadan fast.  Finally, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Robinson.

Any party seeking to object to this Report and Recommendation shall file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  See 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2).  Failure to do so will bar any later challenge or

---

[2]  A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted).  A magistrate judge's report and recommendation provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to sua sponte grant summary judgment where a magistrate judge issues a report recommending the sua sponte granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that report and recommendation served as notice that claims would be sua sponte dismissed).  This Report and Recommendation constitutes fair notice to Plaintiff that his claim against Defendant Robinson is due to be dismissed.  As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review de novo properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Furthermore, it is not necessary for a party to repeat legal arguments in objections.  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; see Symonette v. V.A. Leasing Corp., 648 F. App'x 787, 790 (11th Cir. 2016); Mitchell v. United States, 612 F. App'x 542, 545 (11th Cir. 2015).

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 24th day of July, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA